1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                              San Francisco Division

11    HOI KWONG YU, et al.,                     Case No. 23-cv-03009-RFL (LB)

12              Plaintiffs,

13        v.                                    **DISCOVERY ORDER**

14    ALIEXPRESS E-COMMERCE ONE PTE.            Re: ECF No. 75 & 76
      LTD., et al.,
15
                Defendants.
16

17                                **INTRODUCTION**

18        Calvin Yu died in June 2020 in a fire allegedly caused by a malfunction in a 3D printer

19    manufactured by defendant Shenzhen Tronxy Technology Co. and sold to the decedent via an

20    online platform — operated by defendant AliExpress E-Commerce One — that allows buyers to

21    buy products from sellers. His parents, on their own behalf and as successors to their son's estate,

22    sued the defendants for strict liability and negligence.[1] Shenzhen Tronxy has not appeared.

23        On January 10, 2025, one week before the deadline to complete document discovery, the

24    plaintiffs and AliExpress filed two discovery letters, disputing (1) the defendants' right to medical

25    records and the decedent's internet-browsing history, discovery that the plaintiffs resist in part on

26

27    [1] J. Case-Mgmt. Statement – ECF No. 52 at 2–3; Order – ECF No. 48. Citations refer to material in the
      Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of
28    documents.

ORDER – No. 23-cv-03009-RFL (LB)

United States District Court
Northern District of California

1    the ground that it implicates their privacy interests, and (2) the plaintiffs' requests for documents

2    and depositions of AliExpress employees and corporate designees.[2] The disputes are premature

3    because the parties have not conferred about them adequately. They must do so and file an update

4    with their respective proposed compromises by Wednesday, February 5, 2025, at noon. The court

5    sets a discovery hearing for Thursday, February 6, 2025, at 9:30 a.m. in Courtroom B, 450 Golden

6    Gate Avenue, San Francisco, California.

7

8                                 **STANDARD OF REVIEW**

9        Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

10   claim or defense and proportional to the needs of the case, considering the importance of the issues

11   at stake in the action, the amount in controversy, the parties' relative access to relevant information,

12   the parties' resources, the importance of the discovery in resolving the issues, and whether the

13   burden or expense of the proposed discovery outweighs its likely benefit. Information within this

14   scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

15   "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. NorthWestern Mut.*

16   *Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up)

17   (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). The party moving to compel discovery

18   "has the initial burden of establishing that the information sought is relevant to any party's claim or

19   defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-

20   YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up).

21       California's constitution bestows a broad right of privacy. Cal. Const. Art. I, § 1; *El Dorado*

22   *Sav. & Loan Ass'n v. Super. Ct.*, 190 Cal. App. 3d 342, 345 (1987). This right is "interrelated" with,

23   but is "broader" than, the psychotherapist-patient privilege; the latter has been called "one aspect of

24   the [constitutional] right of privacy." *Davis v. Super. Ct.*, 7 Cal. App. 4th 1008, 1013 (1992). The

25   privacy right extends to discovery proceedings in civil actions. *San Diego Trolley, Inc. v. Super. Ct.*,

26   87 Cal. App. 4th 1083 (2001). "The right to privacy is not absolute; it may be abridged to

27

28   [2] J. Disc. Brs. – ECF Nos. 75–76; Order – ECF No. 69 at 2–3 (staging discovery).

*United States District Court*
*Northern District of California*

1    accommodate a compelling public interest." *Moskowitz v. Super. Ct.*, 137 Cal. App. 3d 313, 316

2    (1980). "One such interest, evidenced by California's broad discovery statutes, is 'the historically

3    important state interest in facilitating the ascertainment of truth in connection with legal

4    proceedings.'" *Id.* (quoting *Britt v. Super. Ct.*, 20 Cal. 3d 844, 857 (1978)).

5

6                                           **ANALYSIS**

7    **1.   Medical Records**

8        AliExpress wants the plaintiffs' and decedent's medical records. It contends that the plaintiffs

9    resist producing any records for the parents or any records for the decedent from before the June

10   2020 fire, "claiming that the request violated their constitutional rights."[3]

11       To support its request, AliExpress points to the complaint's allegations. The fire occurred in

12   June 2020, during the pandemic, and the son was at home, sheltering with his parents. They tried

13   to save him, couldn't, and were there when the firefighters finally extracted him from the house.[4]

14   The son had burns over ninety percent of his body and — despite aggressive medical interventions

15   — died the next day.[5] The parents alleged that the fire caused injury to their respiratory and

16   cardiovascular systems and that they suffered "severe and serious emotional distress, including

17   suffering, anguish, fright, horror, anxiety, worry, shock, agony, and desolation."[6] All plaintiffs

18   incurred costs for medical treatment.[7]

19       According to AliExpress, it needs the parents' records to evaluate any preexisting conditions,

20   "contributing factors" such as smoking, medical treatment for injuries, and mental-health

21   treatment for their claim of emotional distress. The son's mental-health issues — PTSD and

22   depression — may have caused him to engage in risky behavior. He tested positive for

23   benzodiazepine — a strong sedative — when he arrived at the hospital. He "possessed marijuana

24   _____

25   [3] J. Disc. Br. – ECF No. 75 at 2.

26   [4] Third Am. Compl. – ECF No. 55 at 12 (¶ 41).

     [5] *Id.* (¶ 43).

27   [6] *Id.* at 13 (¶¶ 49–50).

28   [7] *Id.* (¶ 51).

United States District Court
Northern District of California

and other undisclosed drugs." His medical history will show whether he had legal prescriptions and whether the drugs may have impaired his faculties and his ability to escape the fire.[8]

The plaintiffs "agree that AliExpress is entitled to seek records related only to the claimed injuries," not unrelated medical records. They offer that the father did not seek medical care for his physical or emotional injuries, and his physical injuries have resolved. The mother saw a mental-health provider. AliExpress did not subpoena those records, but the plaintiffs "agreed to assist with obtaining the medical records via authorization" and asked Kaiser for them on December 6, 2024. They contend that the request for the son's medical records preceding the fire is intrusive and violates his privacy rights.[9]

The plaintiffs agreed in part to the requests by requesting the mother's mental-treatment records from Kaiser and confirming the absence of other records related to the parents' treatment for any injuries. The dispute thus is in part moot. That suggests that the parties did not engage in the meet-and-confer mandated by the referring judge's standing order (requiring "a live conversation" between counsel before they file a discovery dispute) and the undersigned's standing order (attached).[10] The letter looks like a rush job, where AliExpress pasted in its position first, and then the plaintiffs pasted in theirs. (Possibly that is because the parties hurried to file the letter one week before document discovery closed.) AliExpress's letter to the trial judge — asking for a hearing to discuss the case's procedural posture, given the non-appearance of the manufacturer and its inability to date to investigate the cause of the fire — also suggests that the parties need to come up with a plan to move the case forward, including at least by producing relevant records.[11]

The parties can do more to narrow their disputes or illuminate their differences. For the parents, if they are conceding full recovery, and there are no treatment records for physical injury, then the parties ought to be able to resolve the discovery dispute. The mother's Kaiser records are forthcoming. For the son, a lookback period is appropriate to evaluate his medical condition

---

[8] J. Disc. Br. – ECF No. 75 at 2.

[9] *Id.* at 2–3.

[10] https://www.cand.uscourts.gov/judges/lin-rita-f-rfl/.

[11] Letter – ECF No. 81.

United States District Court
Northern District of California

because it is relevant to causation and comparative fault. It also is relevant to his life expectancy and thus to damages. *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980) ("The life expectancy of the deceased is a question of fact for the jury to decide, considering all relevant factors including the deceased's health, lifestyle and occupation."). It is not correct — as set forth above in the standard of review — that a blanket privacy interest precludes contextual medical evidence. Also, the parties did not address the extent to which a person's right of privacy survives his death. *See Pfaff v. Merck & Co.*, No. 20-mc-80148-AGT, 2020 WL 5760478, at *1 (N.D. Cal. Sept. 28, 2020) (flagging issue and ordering production of medical records).

In sum, the parties must confer to narrow their disputes and propose compromises on the remaining issues: the medical records of the parents relevant to any claimed damages for physical injuries and the son's medical records.

## 2. Browsing History

AliExpress wants the decedent's internet-browsing history to understand what he knew about the 3D printer, specifically, what he knew about its operation, whether he searched for information to customize it, whether he downloaded updates from Shenzhen Tronxy, and whether he downloaded jailbreak software to allow him to bypass the printer's heat-stabilization mechanisms. Also, the decedent was an electrical-engineering student, and the fire investigator's photographs showed an apartment "littered with electrical components, wires, soldering irons, heavy machinery, assault-style rifles, and other items that could have contributed to or caused the fire." The browsing history may show experiments that he was conducting. The plaintiffs have agreed to produce the history but only with keyword searches for "Tronxy" or "printer." AliExpress wants full access: it acknowledges that this may result in production of irrelevant information, but the decedent cannot testify, any privacy interests are protected by a protective order, and the plaintiffs

United States District Court
Northern District of California

United States District Court
Northern District of California

1    rejected its proposal that they could review and redact irrelevant entries.[12] The plaintiffs want

2    AliExpress to propose search terms and says that it has refused to do so.[13]

3         AliExpress cites *Camp v. L.A. Arena Co.* to support its argument for complete production of

4    the browsing history. There, in a case involving the plaintiff's religious objection to taking the

5    COVID-19 vaccine, the court allowed production of the plaintiff's browser history for his devices.

6    No. 5:22-cv-02220-JGB (DTBx), 2024 WL 1634095, at *20 (C.D. Cal. Mar. 22, 2024). The

7    defendant asked for production of (1) the plaintiff's devices used to transmit communications

8    about a vaccine exemption, attend religious services, and look up vaccine information (RFPs 32–

9    34), (2) the complete browser history of the devices (RFP 35), and (3) documents about the

10   plaintiff's participation in or viewing of internet sites regarding religious exemptions to the

11   vaccine and the safety of the vaccine (RFPs 38–41). *Id.* at *18–19. The court denied production of

12   the devices as unduly intrusive but allowed the rest. *Id.* at *19–20.

13        The *Camp* court did not explicitly address the privacy issues. It also coupled its disclosure of

14   the browser history to tailored document requests, somewhat suggesting that it considered the

15   request for the browsing history to be tailored to the other requests. *Id.* Courts in any event have

16   recognized that browser history implicates privacy interests or concerns, "perhaps a search for

17   certain symptoms of disease, coupled with frequent visits to WebMD." *Hensen v. Turn,* Inc., No.

18   15-cv-01497-JSW (LB), 2018 WL 5281629, at * 8 (N.D. Cal. Oct. 22, 2018) (citing and quoting

19   *Riley v. California*, 573 U.S. 373, 395 (2014) and denying request to produce full browsing history

20   in a case where the plaintiffs agreed to produce the relevant cookies and browsing histories for

21   particular sites). In a case that did not involve a decedent, asking for it all is too much, but refusing

22   to provide information only about the 3D printer is too little. In this case, as discussed above, the

23   analysis also turns on the extent to which the son's privacy interest survived his death, an issue

24   that the parties did not brief.

25

26

27   _____
     [12] J. Disc. Br. – ECF No. 75 at 3.

28   [13] *Id.*

ORDER – No. 23-cv-03009-RFL (LB)                6

1    The parties ought to be able to work out something to address this dispute. There could be

2    reasonable time parameters. AliExpress could propose reasonable search terms (something that it

3    will have to do in any event). Asking the plaintiffs to review the browser history might be time-

4    consuming and expensive, but AliExpress could engage a third-party vendor to search for

5    responsive information. The plaintiffs could then review that information first. A protective order

6    might serve everyone's needs. The parties must address these issues during their meet-and-confer.

7

8    **3.    The Plaintiffs' Document Requests and Depositions**

9        The disputes in the letter brief at ECF No. 76 are premature. The parties have not conferred on

10   issues and again are talking past each other. For example, the plaintiffs dispute that they have

11   received certain documents. AliExpress responds that they do not exist or that it has produced

12   them.[14] That is unhelpful and a waste of time. Going forward, the parties must talk things out and

13   raise only real disputes. They can mimic the motion-opposition-reply format by this process:

14   moving party emails word copy of up to two pages, responding party inserts opposition of up to

15   two pages, and moving party inserts a reply of up to one page and files the discovery brief.

16

17                                    **CONCLUSION**

18       The parties must confer and file their updated disputes by Wednesday, February 5, 2025, at

19   noon. The court will hear the matters on its regular civil calendar on Thursday, February 6, 2025,

20   at 9:30 a.m. The disputes are preserved. The parties may adjust the deadline to file an update by

21   stipulation.

22       **IT IS SO ORDERED.**

23       Dated: February 3, 2025

24                                                        _____
                                                          LAUREL BEELER
25                                                        United States Magistrate Judge

26

27

----

28   [14] J. Disc. Br. – ECF No. 76 at 4.

ORDER – No. 23-cv-03009-RFL (LB)                    7